**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAMS AMES, JR., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Cause No. 4:19-CV-00173 SCR** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **ST. FRANCOIS COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SEPARATE DEFENDANTS' ANSWER TO PLAINTIFFS'**
**FIRST AMENDED COMPLAINT**

COME NOW Defendants St. Francois County Sheriff's Department, Dennis W. Smith, St. Francois County, and Heather Katherine Smith (hereafter referred to as "Separate Defendants"), by and through counsel, and for their Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint state as follows:

1.      This is a civil action arising under 42 U.S.C. §1983, the Missouri Wrongful Death Statute R.S.Mo. §537.080 and common law avenues of recovery for deprivations of Plaintiffs' rights and for state law claims against all Defendants.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 1.**

2.      Plaintiff William Ames, Jr. is the father of Decedent William D. Ames, III.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 2.**

3.      Plaintiff Laurie Braun is the mother of Decedent William D. Ames, III.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 3.**

4.      Plaintiff Estate of William D. Ames, III (Dec.) (hereafter "the Estate") stands in the stead of the deceased, William D. Ames, III for those rights that cannot be asserted by Plaintiffs William Ames Jr. and Laurie Braun.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 4.**

### Jurisdiction

5.      This cause of action against Defendants arises out the alleged deprivations and eventual death of Decedent William D. Ames, III on or about November 9-11, 2018, while incarcerated as a pre-trial detainee in the St. Francois County Jail in the city of Farmington, St. Francois County, State of Missouri.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 5.**

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and §1341(3) because this Complaint alleges violations of 42 U.S.C. §1983.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 6.**

### VENUE AND COLOR OF LAW

7.      Venue is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in St. Francois County, Missouri, which is located U.S. District Court, Eastern District of Missouri, Eastern Division.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 7.**

8.      Defendant St. Francois County is a political subdivision of the State of Missouri and is a person for purposes of a 42 U.S.C. §1983 action for damages.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 8.**

9.     Defendant St. Francois County Sheriff's Department is a political subdivision of St. Francois County and is a person for purposes of a 42 U.S.C. §1983 action for damages.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 9.**

10.     Defendant Dennis W. Smith, at all times relevant herein, is a natural person who was the St. Francois County Jailer working under the direction of Defendant St. Francois County Sheriff's Department.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 10.**

11.     Defendant Hardy White, at all times relevant herein, is a natural person who was the St. Francois County Assistant Jailer working under the direction of Defendant St. Francois County Sheriff's Department and Defendant Smith.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 11.**

12.     Defendant Kevin Davis, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 12.**

13.     Defendant Dillon Sansoucie, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 13.**

14.     Defendant Jacob Lunsford, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 14.**

15.     Defendant Tim Hansen, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 15.**

16.     Defendant Luke Nickelson, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 16.**

17.     Defendant Alicia Hodge, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 17.**

18.     Defendant Dillon Sansoucie, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 18.**

19.     Defendant Zerick Hahn, at all times relevant herein, is a natural person who was employed at the St. Francois County Jail and working under the direction and control of Defendants Smith, White, and Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 19.**

20.     Defendant Heather Katherine Smith, at all times relevant herein, is a  natural person who was employed or hired by the St. Francois County Sheriff's Department, St. Francois

County, Hardy White, and/or Dennis Smith as a medical nurse and was involved in the death of William D. Ames, III, as further explained herein.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 20.**

## COLOR OF STATE LAW

21.     At all relevant times set forth herein, Defendant St. Francois County Sheriff's Department acted under color of state law, Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 21 as phrased.**

22.     At all relevant times set forth herein, Defendant St. Francois County acted under color of state law, Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 22.**

23.     At all relevant times set forth herein, Defendant Smith acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including the St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 23.**

24.     At all relevant times set forth herein, Defendant Davis acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 24.**

25.     At all relevant times set forth herein, Defendant White acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 25.**

26.     At all relevant times set forth herein, Defendant Lunsford acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 26.**

27.     At all relevant times set forth herein, Defendant Sansoucie acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 27.**

28.     At all relevant times set forth herein, Defendant Hansen acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 28.**

29.     At all relevant times set forth herein, Defendant Nickelson acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri

and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 29.**

30.     At all relevant times set forth herein, Defendant Hodge acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 30.**

31.     At all relevant times set forth herein, Defendant Hahn acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 31.**

32.     At all relevant times set forth herein, Defendant Nurse Smith acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri and its political subdivisions, including St. Francois County, as well as acting under the color of Federal law and the Constitutions of Missouri and the United States of America.

**ANSWER:  Separate Defendants admit the allegations of Paragraph 32.**

**INTENTIONAL WAIVER OF SOVEREIGN IMMUNITY**

33.     Upon information and belief, at all relevant times, Defendant St. Francois County had purchased and had in effect a policy of insurance to insure itself and the St. Francois County Sheriff's Department against claims or causes of actions for damages caused by its employees engaged in government functions, including the torts and civil rights violations described herein.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 33.**

34.     The purchase of said insurance constitutes an intentional waiver of sovereign immunity by Defendant St. Francois County and Defendant St. Francois Sheriff's Department for all of Plaintiffs' claims.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 34.**

35.     Upon information and belief, the policy does not preclude or prevent waiving sovereign immunity as a condition of its issuance, or as a contractual obligation.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 35.**

**FACTS**

36.     In 2004, approximately 14 years prior to his death on November 11, 2018, Decedent William D. Ames, III became disabled after he suffered a traumatic brain injury.  As a result of the 2004 brain injury, Mr. Ames, III began to suffer from seizures and thereafter took anti-seizure prescription medications to prevent further seizures.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 36.**

37.     Decedent's prescription required him to take anti-seizure medications three times per day.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 37.**

38.     The anti-seizure medication worked and if Mr. Ames, III took the anti-seizure medication in a timely manner, further seizures would be prevented.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 38.**

39.     Decedent Ames, III was clean and sober for nearly all of the 14 years after his brain injury, but had, in the months just prior to his death on November 11, 2018, begun using controlled substances after being reintroduced to same by an old acquaintance.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 39.**

40.     On Thursday afternoon, November 8, 2018, at approximately 2:30 p.m., Decedent Ames, III was arrested pursuant to a traffic stop and subsequently incarcerated at the St. Francois County Jail at 1550 Doubet Road in Farmington, St. Francois County, State of Missouri.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 40.**

41.     Plaintiffs do not know why Decedent Ames, III was arrested pursuant to a traffic stop.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 41.**

42.     Decedent Ames, III, during the traffic stop and just prior to his arrest, swallowed a baggie containing a street drug commonly referred to as "flakka".

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 42.**

43.     Upon information and belief, "flakka" consists of a combination of drugs that include crystal methamphetamine, cocaine, and bath salts.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 43.**

44.     Defendant Nurse Smith worked eight hours per day as a Licensed Practical Nurse at the St. Francois County Jail from Monday to Friday during normal business hours.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 44.**

45.     Defendant Nurse Smith did not conduct a medical examination of Decedent Ames, III on Thursday, November 8, 2018 or Friday, November 9, 2018.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 45.**

46.     Defendant Nurse Smith did not administer Decedent Ames, III's anti-seizure medications.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 46.**

47.     Decedent Ames was not arraigned between November 8, 2018 and November 11, 2018, when he died, and accordingly, his status at the jail was one of a pretrial detainee.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 47.**

48.     According to Missouri Casenet, no charges were filed and no tickets were issued against Decedent Ames for his conduct on November 8, 2018.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 48.**

49.     Plaintiffs did not know if Mr. Ames, III was arrested pursuant to a warrant or if a warrant existed in the system that had been previously revoked.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 49.**

50.     At 10:29pm on November 8, 2018, Defendant Lunsford, during the booking and intake of Mr. Ames, completed a Comprehensive Medical Assessment of Mr. Ames and answered "Yes" in response to the question "Are there visible signs of alcohol or drug influence?"

**ANSWER:  Separate Defendants deny the allegations of Paragraph 50.**

51.     Between November 8 and November 9, 2018, Mr. Ames was placed in cell R-8, then cell R-7, then cell R-6, which does not have a working video camera, before finally being placed in cell R-3 containing the restraining chair in which he died.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 51.**

52.     Defendants Davis and Hansen began working their regular evening shift at the St. Francois County Jail at 11:00 p.m. on Friday, November 9, 2018.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 52.**

53.     That night William Ames, III, through the window of his cell, engaged in a brief verbal exchange with Defendants Davis and Hansen as Defendants Davis and Hansen made their rounds within the unit.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 53.**

54.     Defendant Hansen stated during the investigation that Ames got an "attitude" and appeared to be on methamphetamine; further, that Ames was "acting a little crazy," becoming "manic" and talking to an imaginary woman as well as making threatening remarks to other inmates in his cell.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 54.**

55.     At least one witness states with regard to Ames that the deputies "beat him up a little bit" before placing him in the restraint chair for "well over 24 hours."

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 55.**

56.    Defendants Davis and Hansen moved William Ames, III into cell R-3 containing the restraint chair.  Defendant Hansen stated to the investigator that Ames was "not firing on all cylinders" and that something was wrong.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 56.**

57.    Defendants Davis and Hansen at the St. Francois County Jail placed Mr. Ames into the restraint chair, where they secured his wrists and ankles to the chair and strapped his arms, torso, and shoulders down, thus fully restricting his movements and essentially rendering him helpless other than the noises he could make to call for help.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 57.**

58.    On the morning of November 10, Defendant Hodge arrived at work and noted that Ames was in the restraint chair and screaming.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 58.**

59.    After consulting with Defendants Davis and Hansen, Defendant Hodge created a computerized log entry for them because they did not know how to do it themselves.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 59.**

60.    Defendant Hodge sent an email to the entire jail staff warning the staff that Mr. Ames was placed in the restraining chair after he "started freaking out in R6."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 60.**

61.    Defendant Hodge's email noted that Ames was "talking about fighting other inmates" "making claims that there was a female around that wasn't" and "apparently seeing things and not in his right state of mind."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 61.**

62.     Although Defendant Hodge told the investigator that a caseworker at BJC –
known locally as Parkland Health Center – is contacted if they need to seek additional help for a
person who is placed in a restraining chair, there is no indication that Hodge or anyone else
contacted BJC to get assistance for Ames between November 8 and his November 11 death.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 62.**

63.     Defendant Hodge stated in her jail staff email that Ames "has been in the chair
since night shift" and that Ames "said he will kill himself either today or tomorrow.  He will not
STOP screaming and freaking out.  I'm assuming he had drugs on him and took them because he
has been here for a few days and was fine, all this is coming out of nowhere.  We have tried
talking to him and it's doing no good."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 63.**

64.     A handwritten note that appears to have been attached to Defendant Hodge's
email reads "Nickelson – 1312 – making threats of suicide."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 64.**

65.     Defendant Nickelson came to work on November 10 and noted that Mr. Ames
was "delusional." A witness told Defendant Nickelson that Mr. Ames had ingested drugs.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 65.**

66.     The video footage shows Defendant Nickelson later entering the cell where the
"delusional" Ames was restrained and pointing a can of mace at Ames because, as he later
claimed "He just kept screaming.  You could hear the chair rocking."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 66.**

67.     Defendant Davis told the investigator that Mr. Ames' hallucinations became
worse throughout the night of November 10.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 67.**

68.     Defendant Davis knew that Mr. Ames had been in the restraining chair from the time Defendants Davis and Hansen placed him in the chair on Friday night until the time of his death early Sunday morning, without even being allowed to go to the bathroom.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 68.**

69.     Although Defendant Davis felt that Mr. Ames should receive medical attention, he did not contact a medical professional himself during the evening of November 9 or on before he completed his shift on November 10.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 69.**

70.     Although Defendant Nickelson worked from 7am until 3pm on November 10, 2018, and noted Ames delusional behavior, screaming, and not sleeping at all during his entire work shift, he did not seek medical help for Ames despite being told by a witness that Ames had consumed drugs.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 70.**

71.     Defendant Hahn worked as the senior Deputy on the night that Defendants Hansen and Davis placed Mr. Ames in the restraint chair and heard him yelling and screaming throughout the night, but provided no assistance to Ames.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 71.**

72.     When Defendants Hahn and Hansen arrived for their next shift at 11:00pm on November 10, Mr. Ames was still in the restraint chair and Defendant Hahn specifically instructed Defendant Davis to not remove Mr. Ames from the chair.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 72.**

73.     Defendants Hodge, Davis, Hansen, and Hahn never received any training in the use of the restraint chair and have never seen a written policy regarding the use of the restraint chair.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 73.**

74.     Defendant Smith stated during the investigation that he does not have a policy for the use of the restraint chair.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 74.**

75.     The failure of the Defendants Hodge, Davis, Hahn, Nickelson, and Hansen to seek immediate medical or psychological evaluation and treatment for him was clearly an inadequate response to Mr. Ames, III's bizarre actions and behaviors.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 75.**

76.     It has been clearly established since at least 2008 in the Eighth Circuit that a pretrial detainee has a right to be free from deliberate indifferent denials to emergency medical care. *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016).

**ANSWER:  Separate Defendants deny the allegations of Paragraph 76.**

77.     Defendants Hodge, Davis, Hahn, Nickelson, and Hansen, were either personally aware from direct observation or advised at some point between November 9 and November 11 that Mr. Ames, III's arrest and detention that he needed medical intervention and treatment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 77.**

78.     For approximately 25 hours after being fully restrained in a chair, Decedent Ames, III and detainees in the adjoining cells pleaded for help from the guards due to Decedent Ames, III stating aloud that he had, prior to his arrest, swallowed a plastic bag containing a drug cocktail known locally as "flakka."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 78.**

79.     It is obvious to any reasonable person that if someone swallowed a bag containing a combination of drugs that included crystal methamphetamine, cocaine and bath salts, that such person would need immediate medical treatment to remove the bag, hopefully before it bursts or breaks in the stomach (if it had not already done so in the process of swallowing the same).

**ANSWER:  Separate Defendants deny the allegations of Paragraph 79.**

80.     Anyone witnessing Mr. Ames, III's condition at the jail would have recognized he needed medical and/or psychological attention and yet Defendants Davis, Hansen, Hahn, Lunsford, Hodge, and Nickelson did nothing in response.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 80.**

81.     At approximately 11:00 a.m. on Friday, November 9, 2018, Decedent's girlfriend arrived at the jail to visit Decedent and to bring him his newly-refilled prescription of anti-seizure medication, but was turned away by John Does #2-3 without being permitted to deliver the medication to Decedent Ames, III, Heather Katherine Smith or to the St. Francois County Jail so that it could deliver the medication to Mr. Ames, III.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 81.**

82.     Decedent William Ames, upon information and belief, missed taking at least seven regularly-scheduled doses of his anti-seizure medications from Thursday, November 8, 2018 until he died on Sunday, November 11, 2018.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 82.**

83.     It is obvious to any reasonable person knows that if a person is on anti-seizure medication, that it medically necessary to take it as prescribed, as someone can die from a seizure or have other serious medical complications from having a seizure.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 83.**

84.    Upon information and belief, as part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), Defendants, acting pursuant to the Sheriff's Department's policy, do not provide medical personnel to evaluate detainees for medical issues on evenings and weekends.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 84.**

85.    Upon information and belief, as part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), no trained medical personnel are present on evenings and weekends at the St. Francois County Jail to administer medications to inmates on evenings and weekends.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 85.**

86.    Defendant Dennis Smith stated to Plaintiff Laurie Braun and to at least one other witness that the deceased, William D. Ames, III, "probably did not get his medications."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 86.**

87.    Defendant Dennis Smith testified under oath in an unrelated criminal case that prescription medications are not provided to inmates of the county jail during the evenings or weekends because the jail does not provide qualified personnel to administer said medications.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 87.**

88.    By not having medical personnel present on evenings and weekends, the County saves money.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 88.**

89.     Defendants Smith, the St. Francois County Jail and Sheriff's Department had prior knowledge of Decedent's medical needs for anti-seizure medication due to Decedent's history of incarceration at the St. Francois County Jail.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 89.**

90.     Defendant St. Francois County Sheriff Department had prior knowledge of Decedent's medical needs due to the staff's interaction with William Ames, III's girlfriend, who attempted to deliver his anti-seizure medication to him and was turned away on Friday, November 9.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 90.**

91.     Defendant Heather Katherine Smith had prior knowledge of Decedent William Ames III's medical needs due to her prior interactions with Decedent.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 91.**

92.     Upon information and belief, Decedent was kept in restraints for over twenty-four hours, with no breaks, from Friday evening until his death in the early hours of Sunday, November 11, 2018.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 92.**

93.     Upon information and belief, Decedent was not removed from the restraints to stretch or check the circulation in his legs or to use the toilet.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 93.**

94.     During the entire time Decedent was kept in restraints, he repeatedly cried, begged, and pleaded for medical assistance from the guards who were stationed just across the hallway from him.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 94.**

95.     The use of the chair restraints on Mr. Ames, III constituted excessive force.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 95.**

96.     Upon information and belief, Decedent remained in the chair under restraints without exercise, toilet privileges or medical assistance from Friday evening until his death early Sunday morning.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 96.**

97.     It is obvious to any reasonable person that a person needs some period of exercise and monitoring of his physical condition during a prolonged period of being forcibly and tightly strapped to a chair, and that denying someone the freedom to move for over twenty-four hours is callous and shows a deliberate indifference to their well-being.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 97.**

98.     The denial of freedom of movement and toilet privileges for twenty-seven hours constituted cruel and unusual punishment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 98.**

99.     As a pretrial detainee, Mr. Ames, III had the right to be free any punishment at all, including cruel and unusual punishment.  The right of pretrial detainees to be free from any punishment at all has been clearly established since *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

**ANSWER:  Separate Defendants deny the allegations of Paragraph 99.**

100.    From Friday evening until early Sunday morning, other inmates called out to the guards – including Defendants Davis and Hansen – and pleaded with them to assist Decedent Ames, III, but Defendants Davis and Hansen callously ignored the requests for help from Mr. Ames, III and the other inmates who were calling the guards on his behalf.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 100.**

101.    At least once during that weekend, witnesses state that they heard Decedent Ames

gargling, bucking and convulsing in his chair – noises that they interpreted as sounds of

Decedent Ames, III convulsing and suffering from a seizure.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 101.**

102.    On information and belief, if these jailed witnesses heard Decedent gargling,

bucking and convulsing, then Defendants Davis and Hansen necessarily heard the same sounds.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 102.**

103.    Despite the sounds emanating from the Decedent Ames, III's cell where he was

strapped down, no medical evaluation or treatment was afforded to him.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 103.**

104.    Despite the sounds emanating from the Decedent Ames, III's cell, he was not

provided his anti-seizure medication.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 104.**

105.    Despite the sounds emanating from the Decedent Ames, III's cell, none of the

Defendant deputies working on November 9, 10, or 11 called 911.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 105.**

106.    Despite the sounds emanating from Decedent Ames, III's cell, no medical

personnel were contacted and requested to exam Decedent Ames, III's condition to see if he

should be medically treated or sent to the hospital.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 106.**

107.    Upon information and belief, the cell where William Ames, III was restrained

throughout the weekend was equipped with video monitoring equipment that was operational

and accessible to Defendants, including Defendants Davis, Nickelson, Hansen, Lunsford, Hodge, and Hahn.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 107.**

108.    Given the above information known to Defendants Davis, Nickelson, Hansen, Lunsford, Hodge, and Hahn, they had more than enough information, even as lay persons, to easily recognize the necessity of immediate medical evaluation and intervention on behalf of Mr. Ames, III, but they deliberately and intentionally disregarded his medical needs.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 108.**

109.    At least once during the weekend, either Defendant Davis or Hansen were heard approaching Decedent's cell, opening the door, and screaming at Decedent for several minutes in an attempt to quiet Decedent.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 109.**

110.    During that long weekend, Defendant Davis approached inmates in an adjoining cell and told them that no one would "catch a case" if they wanted to go into Decedent's cell and physically assault Decedent Ames, III in order to quiet Decedent Ames, III.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 110.**

111.    On information and belief, Defendant Davis left the cell doors of the other inmates and Decedent Ames, III's doors unlocked, so that the other inmates could assault Mr. Ames, III.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 111.**

112.    Mr. Ames, III screamed, howled and yelled for hours on end until he could no longer speak at all and yet Defendants Davis, Hahn, Hansen, Hodge, and Nickelson never

attempted to talk to him or seek medical or psychological evaluation, and instead, some of the Defendants seemed to only be concerned with forcing Mr. Ames, III to stop making noise.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 112.**

113.    Defendants Davis, Hahn, Hansen, Hodge, and Nickelson never acted to provide medical care for Mr. Ames despite all the concerns raised by their own observations of Ames' condition and bizarre behaviors.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 113.**

114.    Early in the hours of Sunday morning, Decedent stopped pleading for help and the inmates in the adjoining cells heard what they described as "death rattles."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 114.**

115.    On information and belief, if the inmates in the adjoining cells could hear death rattles, then so too could Defendant Davis and Defendant Hahn.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 115.**

116.    Upon information and belief, Decedent stopped moving or making any noises and became completely unresponsive for approximately one hour before Defendant Davis entered the cell and – for the first time all weekend – called for emergency assistance.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 116.**

117.    Decedent never recovered consciousness and is believed to have died between 1:30 a.m. and 3:30 a.m. on Sunday, November 11, 2018.

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 117.**

118.    An autopsy listed Decedent's cause of death as "Acute Methamphetamine Intoxication" and indicated that a plastic bag was discovered in the contents of Decedent's stomach.

**ANSWER:  The referenced document speaks for itself and therefore Separate Defendants deny the allegations of Paragraph 118.**

119.    Had William Ames, III been taken to the Hospital on Thursday (November 8, 2018) or Friday (November 9, 2018), he could have had the "flakka" in his stomach mechanically removed (had his stomach pumped) or alternatively, been given medication to force him to vomit up the medications in his stomach.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 119.**

120.    Had Mr. Ames, III been examined by Heather Katherine Smith on Thursday (November 8, 2018) or Friday (November 9, 2018), or taken to the hospital on Thursday or Friday, he would have likely been given treatment for drug intoxication or at least received his anti-seizure medication in a timely manner.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 120.**

121.    Had Defendants Smith, White, the St. Francois County Jail, and St. Francois County provided proper training and resources to its staff, Mr. Ames might still be alive.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 121.**

**COUNT I**

**VIOLATIONS OF 42 U.S.C. § 1983, THE EIGHTH AND FOURTEENTH
AMENDMENTS OF THE U.S. CONSTITUTION, AND STATE AND FEDERAL
LAWS FOR INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND FAILURE TO
PROVIDE MEDICAL CARE BY DEFENDANTS SMITH, DAVIS, JOHN DOES #1-3,
AND HEATHER KATHERINE SMITH**

122.    Plaintiffs re-allege all of the preceding paragraphs as if set forth fully herein.

**ANSWER:  In response to Paragraph 122, Separate Defendants re-allege, and
incorporate by reference as if fully set forth herein, their responses to Paragraphs 1 – 121.**

123.    Defendants St. Francois County, St. Francois County Sheriff, Dennis W. Smith,
Kevin Davis, Jake Lunsford, Dillon Sansoucie, Tim Hansen, Luke Nickelson, Hardy White,
Alicia Hodge, Zerick Hahn, and Heather Katherine Smith had a duty under 42 U.S.C. §1983 and
the 8th Amendment of the United States Constitution as applied to the State of Missouri and its
political subdivisions through the 14th Amendment of the U.S. Constitution, to provide William
D. Ames, III, a disabled pre-trial detainee, with appropriate medical evaluations, and necessary
medical treatment and care.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 123.**

124.    Defendants named in Count I knew that William Ames, III required medications
to prevent seizures.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 124.**

125.    Defendants named in Count I herein failed and refused to provide adequate
medical evaluation and treatment, causing Decedent to suffer a seizure during the period he was
restrained in a chair with his head and extremities strapped down and completely helpless.  This
seizure could have been prevented by providing Mr. Ames, III with his anti-seizure medication.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 125.**

126.    Defendants named in Count I herein failed and refused to provide needed medical evaluation, intervention and treatment for the "flakka" bag that they were informed that Mr. Ames, III swallowed.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 126.**

127.    Upon information and belief, when told that William Ames, III had swallowed a bag of "flakka," Defendant Davis stated that he did not care because Ames was "just a f*cking junkie."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 127.**

128.    Defendants named in Count I herein failed and refused to provide needed medical evaluation, intervention and treatment to Decedent even though they had sufficient information that Decedent had swallowed controlled substances, that may have included methamphetamine, cocaine and bath salts.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 128.**

129.    Although William Ames, III was forcibly restrained for over twenty-four hours, Defendants named in Count I herein failed to provide any medical evaluation, medical supervision, intervention or treatment to Mr. Ames, III until *he was completely unresponsive* after an entire weekend of being restrained in the chair without breaks, toilet access, and his anti-seizure medication.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 129.**

130.    Defendants named in Count I herein failed and refused to provide Mr. Ames, III with access to the toilet or any opportunity to stand, move about, or stretch his limbs; and instead, intentionally and maliciously kept Decedent fully restrained in a chair and thus rendered

him completely helpless from Friday evening on November 9, 2018 until his death early Sunday morning, November 11, 2018.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 130.**

131.    Defendants named in Count I herein knew that Mr. Ames, III was in danger of serious harm from swallowing the "flakka" bag of methamphetamine, cocaine and bath salts.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 131.**

132.    Defendants named in Count I herein knew that Mr. Ames, III was in danger of serious, immediate, and proximate harm from seizures if he was not provided his anti-seizure medication.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 132.**

133.    Defendants named in Count I herein acted with deliberate indifference to Mr. Ames, III's medical needs, exposing him to a sufficiently substantial risk of serious damage to his health, which ultimately culminated in Mr. Ames, III's untimely and preventable death.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 133.**

134.    Be refusing to provide Decedent William Ames with proper medical care, Defendants named in Count I herein deprived William Ames of his right to medical care and treatment, in violation of 42 U.S.C. § 1983 and the 8th and 14th Amendments to the Constitution of the United States, and exhibited a callous and deliberate indifference to, and a reckless and conscious disregard for, his serious medical needs, including but not limited to denying him access to intensive and structured medical evaluation, care, treatment, and observation necessary to address serious medical needs and prevent suffering and death.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 134.**

135.    Defendants Sheriff, County, Smith, Nurse Smith, White, Davis, Hahn, Nickelson, Hansen, and Hodge exhibited a reckless and callous, conscious disregard and deliberate indifference to the obvious and serious threat to the mental health and physical well-being of Decedent William Ames, III.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 135.**

136.    Defendants Sheriff, Smith, White, Davis, Hahn, Nurse Smith, Nickelson, Hanson, and Hodge knew that the Decedent had a history of drug addiction and seizures and there was an obvious and substantial risk that Decedent, if left untreated, would suffer serious injury or death, that such injury or death was reasonably foreseeable, and that the threat of injury or death was imminent and immediate.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 136.**

137.    In light of the aforementioned averments, William Ames suffered from both an objectively and a subjectively substantial risk of serious harm while under the care and custody of Defendants Sheriff, Smith, White, Davis, Hahn, Nurse Smith, Nickelson, Hanson, and Hodge , and said Defendants reacted to this risk in an objectively and subjectively unreasonable manner.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 137.**

138.    As the result of the actions of the Defendants' named in Count I herein and their disregard of and indifference to Decedent William Ames' constitutionally protected due process rights to be provided with proper medical evaluation and care and to be safe and free from harm, the Decedent's medical needs and physical needs were ignored.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 138.**

139.    As the result of the actions of the Defendants' named in Count I herein and their deliberate disregard of and deliberate indifference to Decedent William Ames, III's

constitutionally protected right to be provided with proper medical evaluation and care and to be kept safe and free from harm, the Decedent was berated and threatened with physical harm if he would not stop making noise while suffering at least one seizure and from an overdose of drugs, and a prolonged, agonizing death while being kept completely helpless from physical restraint.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 139.**

140.    The death of William D. Ames, III is the direct and proximate result of the deliberate indifference to Mr. Ames, III's medical needs and thus resulting denial of care of Defendants named in this Complaint.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 140.**

141.    Taken in total, Defendants' behavior as described in this and every Count of this Complaint shocks the conscience.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 141.**

142.    As a result of the actions and failures to act of the Defendants named herein , Plaintiffs are entitled to such damages as are fair and just for the pain, suffering and death of William D. Ames, III and the loss thus occasioned, including but not limited to the pecuniary losses suffered by the death of Decedent, funeral expenses, and the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support; further including the loss of services, attention, advice, protection, earnings, and other value of benefits which would have been provided by William Ames, Jr., during the remainder of his expected lifetime.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 142.**

**Compensatory Damages**

143.    Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against all named Defendants, in each of their individual capacities.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 143.**

**Punitive Damages**

144.    The actions and failures to act of all named Defendants were willful, wanton, malicious, or with complete reckless indifference to, or conscious disregard for, the rights of William Ames, III.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 144.**

145.    The actions of all named Defendants were taken in the face of a perceived risk that the actions would violate federal and/or state laws and the Eighth Amendment of the U.S. Constitution as applied to the political subdivisions of the State of Missouri through the Fourteenth Amendment of the U.S. Constitution. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

**ANSWER:  Separate Defendants deny the allegations of Paragraph 145.**

146.    The acts of all named Defendants were willfully wrong or done with malice, corruption, or bad faith. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (citing *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006); *Jackson v. City of Wentzville,* 844 S.W.2d 585, 588 (Mo.App.1993).

**ANSWER:  Separate Defendants deny the allegations of Paragraph 146.**

147.    Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of exemplary or punitive damages against all named Defendants, in their individual capacities, so as to punish the Defendants and deter others from acting in a similar manner.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 147.**

## Attorney Fees

148.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorney fees and costs incurred in pursuing this claim.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 148.**

WHEREFORE, Plaintiffs request this Court enter judgement in favor of Plaintiffs and against Defendants St. Francois County, St. Francois County Sheriff, Dennis W. Smith, Kevin Davis, Jake Lunsford, Dillon Sansoucie, Tim Hansen, Luke Nickelson, Hardy White, Alicia Hodge, Zerick Hahn, and Heather Katherine Smith, jointly and severally, for damages for the wrongful death of William Ames, Jr., as are fair and reasonable; for reasonable punitive or exemplary damages in such sum as will serve to punish and deter Defendants and others from future conduct such as the described herein; for Plaintiffs' attorney fees and costs herein expended, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT II

### FAILURE TO TRAIN AGAINST DEFENDANTS ST. FRANCOIS COUNTY, MISSOURI AND ST. FRANCOIS COUNTY, MISSOURI'S SHERIFF'S DEPARTMENT; FOR FAILURE TO STAFF APPROPRIATELY TRAINED PERSONNEL

149.     Plaintiffs incorporate the above allegations as if set forth in full herein.

**ANSWER:  In response to Paragraph 149, Separate Defendants re-allege, and incorporate by reference as if fully set forth herein, their responses to Paragraphs 1 – 148.**

150.     Defendants County, Sheriff, Smith, and White all had a duty to train their employees to recognize when a pretrial detainee – one with a disability, no less - needs medical and/or psychological evaluation. *Yellow Horse v. Pennington Cty.,* 225 F.3d 923, 928 (8th Cir.

2000) Defendants County, Sheriff, Smith, and White all had a duty to train its employees on how to obtain immediate medical and/or psychological evaluations for pretrial detainees.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 150.**

151.    On information and belief, the Defendants County, Sheriff, Smith, and White have intentionally failed and refused to provide sufficient medical staff during evenings and weekends to see to the medical needs of pretrial detainees

**ANSWER:  Separate Defendants deny the allegations of Paragraph 151.**

152.    Upon information and belief, Defendants County, Sheriff, Smith, and White failed to provide their staff – including Defendants Lunsford, Hahn, Hodge, Nickelson, Davis, and Hansen – with the appropriate training to recognize when medical evaluation and/or invention is necessary.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 152.**

153.    On information and belief, the Sheriff's Department, the County and the Jail have a policy of not staffing appropriate medical personnel on evenings and weekends to save money.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 153.**

154.    By failing to train the evening and weekend staff on recognizing when a pretrial detainee needs medical treatment, and by failing to provide staff that have those skills, the Sheriff's Department, the County and the Jail violated 42 U.S.C. 1983 and Mr. Ames, III's Constitutional rights.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 154.**

**Compensatory Damages**

155.    The actions of Defendants County, Sheriff, Smith, and White were taken in the face of a perceived risk that the actions would violate federal and/or state laws.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 155.**

156.    Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against Defendants County, Sheriff, Smith, and White.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 156.**

**Attorney Fees**

157.    Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorney fees and costs incurred in pursuing this claim.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 157.**

WHEREFORE, Plaintiffs request this Court enter judgement in favor of Plaintiffs and against Defendants County, Sheriff, Smith, and White, jointly and severally, for damages for the wrongful death of William Ames, Jr., as are fair and reasonable; for reasonable punitive or exemplary damages in such sum as will serve to punish and deter Defendants and others from future conduct such as the described herein; for Plaintiffs' attorney fees and costs herein expended, and for such other and further relief as this Court deems just and proper in the premises.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1982 FOR CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AGAINST ALL DEFENDANTS

158.    Plaintiffs incorporate the above allegations as if set forth in full herein.

**ANSWER:  In response to Paragraph 158, Separate Defendants re-allege, and incorporate by reference as if fully set forth herein, their responses to Paragraphs 1 – 157.**

159.    Restraining Mr. Ames, III in a chair from Friday evening until Sunday morning without relief constitutes cruel and unusual punishment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 159.**

160.    Denying Mr. Ames, III appropriate food and water for approximately twenty-seven hours constitutes cruel and unusual punishment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 160.**

161.    Denying Mr. Ames, III access to thrice-daily medications to control life-threatening seizures for four days constitutes cruel and unusual punishment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 161.**

162.    Denying Mr. Ames, III food for approximately twenty-seven hours constitutes cruel and unusual punishment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 162.**

163.    Denying Mr. Ames, III toilet privileges for approximately twenty-seven hours constitutes cruel and unusual punishment.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 163.**

164.    Denying Mr. Ames, III access to medical evaluation, intervention and treatment constitutes cruel and unusual punishment and resulted in his untimely death.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 164.**

**Compensatory Damages**

165.    Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of compensatory damages against all Defendants, jointly and severally.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 165.**

**Punitive Damages**

166.    The actions and failures to act of all Defendants named herein were willful, wanton, malicious, or with complete reckless indifference to, or conscious disregard for, the rights of William Ames, III to be free from any kind of punishment as a pretrial detainee.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 166.**

167.    The actions of all Defendants were taken in the face of a perceived risk that the actions would violate the Eighth and Fourteenth Amendments to the Constitution, as well as federal and/or state laws.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 167.**

168.    Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to an award of exemplary or punitive damages against all Defendants, jointly and severally, so as to punish the Defendants and deter others from acting in a similar manner.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 168.**

**Attorney Fees**

169.    Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover their attorney fees and costs incurred in pursuing this claim.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 169.**

WHEREFORE, Plaintiffs request this Court enter judgement in favor of Plaintiffs and against Defendants St. Francois County, St. Francois County Sheriff, Dennis W. Smith, Kevin Davis, Jake Lunsford, Dillon Sansoucie, Tim Hansen, Luke Nickelson, Hardy White, Alicia Hodge, Zerick Hahn, and Heather Katherine Smith, jointly and severally,  additional damages for the wrongful death of William Ames, Jr., as are fair and reasonable; for reasonable punitive or exemplary damages in such sum as will serve to punish and deter Defendants and others from

future conduct such as the described herein; for Plaintiffs' attorney fees and costs herein expended, and for such other and further relief as this Court deems just and proper in the premises.

<u>**COUNT IV**</u>
<u>**VIOLATIONS OF THE REHABILITATION ACT OF 1973, AS AMENDED IN 1992 AND 1998, AND VIOLATIONS OF THE AMERICANS WITH DISABILITY ACT OF 1990(42 U.S.C. § 12101 *ET SEQ.* AND 29 U.S.C. § 701 *ET SEQ.*) AGAINST DEFENDANTS ST. FRANCOIS COUNTY, AND THE ST. FRANCOIS COUNTY SHERIFF'S DEPARTMENT MISSOURI FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES, AND ATTORNEY FEES**</u>

170.    Plaintiffs re-state and re-allege all of the preceding paragraphs 1 through 169 as if fully set forth herein.

**ANSWER:  In response to Paragraph 170, Separate Defendants re-allege, and incorporate by reference as if fully set forth herein, their responses to Paragraphs 1 – 169.**

171.    The claim against Defendants County and Sheriff is brought pursuant to 42 U.S.C. § 12101 *et seq.*

**ANSWER:  Separate Defendants deny the allegations of Paragraph 171.**

172.    Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (hereinafter the "ADA") provides, in part, that:

> "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 172.**

173.    Title II of the Act prohibits, among other things:

    a.   Limiting a qualified individual's enjoyment of any right, privilege,

         advantage, or opportunity enjoyed by others receiving an aid, benefit,

         or service of an agency; and

    b.   Subjecting a qualified individual to discrimination under any program

         or activity conducted by an agency.  28 C.F.R. § 39.130.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 173.**

174.    Decedent William Ames was disabled as defined by 42 U.S.C. § 12102 and a "qualified individual" as defined by 42 U.S.C. § 12131(2) as the result of a traumatic brain injury that he suffered approximately fourteen years prior to his death and, because of that injury, received disability benefits and medical treatment with anti-seizure medication.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 174.**

175.    Defendant St. Francois County and Defendant Sheriff are public entities in charge of the St. Francois County Jail, and each of them violated Title I of the ADA, pursuant to their standard policies, official decisions or custom and practice.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 175.**

176.    Defendant St. Francois County and Defendant Sheriff owed Decedent William Ames, III a non-delegable duty to ensure that his well-being and safety would not be compromised as a result of discrimination based on his disability.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 176.**

177.    Defendant St. Francois County and Defendant Sheriff are vicariously liable for the actions of any and all persons or entities Defendant St. Francois County and Defendant Sheriff designated to care for Decedent Ames.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 177.**

178.    The agents and employees of Defendant St. Francois County and Defendant Sheriff were authorized to act for Defendant St. Francois County and Defendant Sheriff when they committed the ADA violations alleged herein.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 178.**

179.    The agents and employees of Defendant St. Francois County and Defendant Sheriff accepted the undertaking of acting on behalf of Defendant St. Francois County and Defendant Sheriff when they committed the ADA violations alleged herein.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 179.**

180.    The agents and employees of Defendant St. Francois County and Defendant Sheriff were controlled by Defendant St. Francois County and Defendant Sheriff when they committed the alleged ADA violations.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 180.**

181.    The ADA violations alleged herein were committed by agents and employees who were acting within the course and scope of their employment and/or agency with Defendant St. Francois County and/or Defendant Sheriff.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 181.**

182.    Defendant St. Francois County and Defendant Sheriff and their personnel and hired entities charged with Mr. Ames, III's care knew or should have known of Decedent Ames III's need for reasonable accommodations.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 182.**

183.    Defendant St. Francois County and Defendant Sheriff and the persons and entities charged with caring for persons with disabilities, like Decedent, acted intentionally and/or with

deliberate indifference to Decedent's need for reasonable accommodations as a person with disabilities, in that:

    a.   Decedent Ames, III, through the lack of treatment and adequate supervision, was not able to interact with others, form friendships, visit, chat, and move at liberty within set bounds, subject only to administrative and disciplinary needs.

    b.   Decedent Ames, III, through the lack of treatment and adequate supervision, was not able to enjoy physical comforts such as games, books, radios, access to canteen, frequent showers, visits, and phone calls, subject only to administrative and disciplinary needs.

    c.   Decedent Ames, III, through the lack of treatment and adequate supervision, was not able to enjoy educational facilities, including a library, writing materials, study aids, and educational programs, subject only to administrative and disciplinary needs.

    d.   Decedent Ames, III, through the lack of treatment and adequate supervision, was not able to enjoy religious activities, including chapel, study groups, religious materials, icons and observances, subject only to administrative and disciplinary needs.

    e.   Decedent Ames, III, through the lack of treatment and adequate supervision, was deprived of a safe environment, free of known hazards, with adequate sanitation and removal of traps and obstructions.

    f.   Decedent Ames, III, being deprived of his seizure medications and with his extremities restrained, was exposed to a range of hazards that led to his death.

    g.   Decedent Ames, III was entitled to receive care and treatment that was responsive to his particular health needs, including testing, diagnosis, surgery, and monitoring; instead, Decedent was strapped into restraints and deprived of food, water, and access to toilet facilities in an effort to keep Decedent subdued and silent throughout the weekend.

    h.   Decedent Ames, III was entitled to receive security monitoring to protect him from violence at the hands of other inmates and staff. Decedent Ames, III was restrained at the hands of the staff and received little or no security monitoring.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 183 and all subparts.**

184.    As a direct and proximate result of the policies, official decisions or custom and practice of Defendants St. Francois County and Defendant Sheriff and their agents and employees who were charged with caring for Decedent, to refuse and fail to provide William Ames, III with accommodations for his disability and the satisfaction of common needs necessary to a decent life, Mr. Ames, III suffered from prolonged isolation, despair, physical pain and, ultimately, death from an untreated overdose while restrained to a chair from early Friday evening of November 9, 2018 to early Sunday morning on November 11, 2018.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 184.**

**Compensatory Damages**

185.    Pursuant to 42 U.S.C. § 1201 *et seq.*, Plaintiffs are entitled to an award of compensatory damages against Defendant St. Francois County and Defendant Sheriff, jointly and severally.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 185.**

186.    The actions of Defendant St. Francois County and Defendant Sheriff were taken in the face of a perceived risk that the actions would violate federal and/or state laws.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 186.**

187.    Plaintiffs are entitled to an award of exemplary or punitive damages against Defendant St. Francois County and Defendant Sheriff, jointly and severally, so as to punish the Defendants and deter others from acting in a similar manner.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 187.**

**Attorney Fees**

188.    Pursuant to 42 U.S.C. § 12205, Plaintiffs are entitled to recover their attorney fees and costs incurred in pursuing this claim.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 188.**

WHEREFORE, Plaintiffs request this Court enter judgement, pursuant to 42 U.S.C. § 1201 *et seq,* in favor of Plaintiffs and against Defendant St. Francois County and Defendant Sheriff, jointly and severally, for damages for the wrongful death of William Ames, Jr., as are fair and reasonable; for Plaintiffs' attorney fees and costs herein expended, and for such other and further relief as this Court deems just and proper in the premises.

## SUPPLEMENTAL STATE CLAIM

## COUNT V

## <u>WRONGFUL DEATH AGAINST ALL DEFENDANTS</u>

189.    Plaintiffs re-state and re-allege each and every one of the preceding paragraphs 1 through 188 as if fully set forth herein.

**ANSWER:  In response to Paragraph 189, Separate Defendants re-allege, and incorporate by reference as if fully set forth herein, their responses to Paragraphs 1 – 188.**

190.    Plaintiffs William Ames and Laurie Braun bring this wrongful death action as the surviving natural father and natural mother of Decedent William D. Ames, III pursuant to R.S.Mo. § 537.080(1).

**ANSWER:  Separate Defendants lack sufficient information to admit or deny, and therefore deny Paragraph 190.**

191.    All Defendants – Defendants St. Francois County, St. Francois County Sheriff, Dennis W. Smith, Kevin Davis, Jake Lunsford, Dillon Sansoucie, Tim Hansen, Luke Nickelson, Hardy White, Alicia Hodge, Zerick Hahn, and Heather Katherine Smith – owed a non-delegable duty to Decedent Ames to use reasonable care to ensure his safety.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 191.**

192.    Defendants as named herein failed to perform their duty of using reasonable to ensure the Decedent's safety.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 192.**

193.    All named Defendants failed to monitor and treat Decedent's medical condition and needs, including, but not limited to:

a.      Failing to provide Decedent, who was known by them to have a history of seizures and illegal use of controlled substances, with a medical examination upon his arrival on Thursday, November 8, 2018.

b.      Failing to provide the Decedent, who was known to suffer from debilitating seizures, with his prescription anti-seizure medication.

c.      Failing to provide Decedent, who had a history of illegal use of controlled substances, with regular monitoring despite being made aware while in their care and custody that Mr. Ames, III had just prior to his arrest swallowed a plastic bag containing a dangerous drug cocktail known locally as "flakka".

d.      Failing to provide Decedent with immediate crisis stabilization care despite having knowledge of Decedent's history of seizures, drug usage, and recent ingesting of a dangerous illegal drug cocktail of methamphetamine, cocaine and bath salts.

e.      Failing to address Decedent's lack of unrestricted movement, exercise, food, water, access to a toilet, companionship, and physical well-being.

f.      In the absence of addressing his needs failing to at least place Decedent Ames under adequate supervision during Decedent's long hours of being physically restrained in a chair or taking preventive measures necessary to prevent his death, despite knowledge of the risk posed by Decedent's medical history, history of illegal drug use, and the recent news that Decedent

had recently ingested a bag containing a dangerous street drug cocktail known

as "flakka."

**ANSWER:  Separate Defendants deny the allegations of Paragraph 193 and all subparts.**

194.    As a direct and proximate result of the failures by the named Defendants to perform their duty of reasonable care to ensure the safety of William Ames, Jr., William Ames Jr. suffered cruel and unusual punishment for hours on end as the result of an overdose before dying of acute methamphetamine intoxication, not to mention the inability to move, to use the toilet, to drink water or have food to eat.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 194.**

195.    The named Defendants were aware that inmates and pretrial detainees, including Decedent Ames, were not receiving minimally adequate health care at St. Francois County Jail.

**ANSWER:  Separate Defendants deny the allegations of Paragraph 195.**

196.    It was reasonably foreseeable that harm would befall Decedent Ames, either directly or indirectly, as the result of the actions and omissions of the named Defendants

**ANSWER:  Separate Defendants deny the allegations of Paragraph 196.**

WHEREFORE, Plaintiffs pray for such sums as are fair and reasonable in excess of Twenty-Five Thousand Dollars ($25,000.00) as actual damages against Defendants St. Francois County, St. Francois County Sheriff, Dennis W. Smith, Kevin Davis, Jake Lunsford, Dillon Sansoucie, Tim Hansen, Luke Nickelson, Hardy White, Alicia Hodge, Zerick Hahn, and Heather Katherine Smith; further, Plaintiffs pray for an additional sum as is fair and reasonable for damages for the aggravating circumstances attending the death of Decedent William Ames, Jr.; together with their costs herein expended, plus pre-judgment interest.

## AFFIRMATIVE DEFENSES

For the Separate Defendants' affirmative defenses on all counts, the Separate Defendants state as follows:

I.      The Complaint fails in its entirety to state a claim upon which relief may be granted against the Separate Defendants.

II.     The Separate Defendants deny each and every allegation in the Complaint that is not specifically admitted herein.

III.    Plaintiffs' claims against the Separate Defendants in all counts seeking relief under the laws of the State of Missouri are barred by the application of the public duty doctrine.

IV.     Plaintiffs' claims against the Separate Defendants in all counts seeking relief under the laws of the State of Missouri are barred by the application of the doctrine of official immunity.

V.      To the extent Plaintiffs seek to recover any damages for medical treatment, pursuant to Section 490.715 R.S. Mo., there is a presumption (pursuant to §490.715 R.S.Mo.) that the dollar amount necessary to satisfy the financial obligation to the healthcare provider represents the value of the medical treatment rendered.

VI.     Plaintiffs' claims against the Separate Defendants in all counts seeking relief under federal law are barred by the application of the doctrine of qualified immunity; whatever actions the Separate Defendants may have taken with reference to Plaintiffs were undertaken reasonably in good faith and were not in violation of any clearly established rights secured for Plaintiffs by the Federal Constitution.

VII.    Plaintiffs' claims against the Separate Defendants in all counts seeking relief

under the laws of the State of Missouri are barred by the sovereign immunity doctrine.

VIII.    Plaintiffs' claims are barred for failure to exhaust administrative remedies.

IX.    Plaintiffs' claims are barred by the applicable statute(s) of limitations.

X.    For further answer, and by way of affirmative defense, the Separate Defendants state that any actions taken by the Separate Defendants, if any, were justified under the circumstances that existed at the time.

XI.    For further answer, and by way of affirmative defense, the Separate Defendants state that the death of Plaintiffs' decedent was the direct result of his conduct, negligence, carelessness, and comparative fault directly contributing thereto in that he voluntarily ingested a lethal amount of unlawful narcotics that caused his death.

XII.    Further answering and by way of affirmative defense, the Separate Defendants state that Plaintiffs' claims for punitive damages violates the Separate Defendants' rights secured by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and by Article 1, §2, §10, §13 and §21 of the Missouri Constitution and that the claim for punitive damages is for the purpose of punishing the Separate Defendants and is tantamount to the imposition of a criminal fine based upon conduct and a mental state which is not defined with sufficient precision to notify defendants in advance of the conduct which will give rise to imposition of punishment in the form of punitive damages; and, in that the amount of the penalty that may be imposed is indeterminate in that there are no standards governing the decision of the fact finder in determining the severity of punishment to be inflicted, all of which violate the Separate Defendants' right to procedural and substantive due process secured by both the Federal and State constitutions; the claim for punitive damages constitutes as excessive fine and therefore

deprives the Separate Defendants of the guaranty secured by the Federal and State constitutions that excessive fines shall not be imposed; the punitive damages claim discriminates against the Separate Defendants on the basis of wealth, in that different amounts can be awarded against different defendants for the same act based only upon the difference in material wealth, and further the lack of standards governing the imposition of punitive damages allows the fact finder to impose punishment on one defendant while refusing to impose punishment on another defendant for engaging in the same or similar conduct, and therefore, is irrational, arbitrary and capricious, and constitutes a deprivation of the Separate Defendants' rights to the equal protection of the law as secured by the Federal and State Constitutions; the claim for punitive damages amounts to an ex post facto law and punishment which is retrospective in operation, impairs the Separate Defendants' right to contract and to access to the courts, and further constitutes an uncertain remedy, all in contravention of the rights secured for the Separate Defendants in the Federal and State Constitutions.

XIII.   To the extent that and claims contained within the First Amended Complaint are construed such that "St. Francois County Jail" is a purported Defendant, it is not a suable entity and therefore must be dismissed.

WHEREFORE, having fully answered the Complaint, the Separate Defendants pray that this Honorable Court enter its Order and Judgment dismissing Defendants St. Francois County Sheriff's Department, Dennis W. Smith, St. Francois County, and Heather Katherine Smith with prejudice, for the recovery of their costs and attorney fees provided at law, and for all such other and further relief deemed just and proper.

Respectfully submitted,

HELLMICH, HILL & RETTER, LLC


  /s/ Michelle V. Stallings
William A. Hellmich, #31182MO
Michelle V. Stallings, #57833MO
1049 North Clay Avenue
Kirkwood, MO  63122
314-646-1110 – Phone
314-646-1122 – Fax
bill@hellmichhillretter.com
michelle@hellmichhillretter.com

*Attorneys for Defendants*



## CERTICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed via the court's electronic filing system, this 31st day of December, 2019, to all counsel of record.


  /s/ Michelle V. Stallings