UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAMS AMES, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No. 4:19-CV-00173 SRC |
| | ) | |
| ST. FRANCOIS COUNTY SHERIFF'S | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ST. FRANCOIS COUNTY, DENNIS SMITH AND
HARDY WHITE'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
COUNTS I, II, III AND IV OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

## I.    INTRODUCTION

This case arises out of the death of a 36-year-old inmate, William Daniel Ames

(hereinafter "Ames").  On November 11, 2018, Ames died in the St. Francois County Jail as a

result of acute methamphetamine intoxication.  Ames' parents, William Ames, Jr. and Laurie

Braun, as well as the Estate of William D. Ames, III, have brought a five-count First Amended

Complaint (ECF 24) against ten individuals, St. Francois County, (the "County") and the St.

Francois County Sheriff's Department.  The specific claims are as follows:

Count I: 42 U.S.C. §1983 Deliberate Indifference to Serious Medical Needs

Count II: 42 U.S.C. §1983 Failure to Train

Count III: 42 U.S.C. §1983 Cruel and Unusual Punishment in Violation of the 8th and 14th
Amendments

Count IV: 42 U.S.C. §1983 Violations of the Rehabilitation Act of 1973 and Americans
with Disabilities Act

Count V: 42 U.S.C. §1983 State Law Wrongful Death (Negligence)

The claims against Defendant St. Francois County (the "County") are based on *Monell* and its progeny.  The claims against Defendants Dennis Smith and Hardy White (hereinafter jointly the "Supervisor Defendants") are similarly based on alleged supervisory liability.  This Memorandum is submitted in support of the County's[1] and Supervisor Defendants' Motion to Dismiss Counts I, II, III and IV of the *First Amended Complaint*.

## II.   MOTION TO DISMISS STANDARD

This Court recently summarized the appropriate standard as follows:

> The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement … showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).
>
> When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Rule 8 does not "unlock the doors of discovery

---

[1] Plaintiffs also purport to sue the St. Francois County Sheriff's Department.  This alleged entity has filed a separate Motion to Dismiss because it is not a sueable entity.  To the extent that is might be determined that the Department is a sueable entity, this Motion is equally applicable to the Defendant St. Francois County Sheriff's Department.

2

for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. 1937.  "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm,* 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations and citations omitted); *Iqbal,* 556 U.S. at 677-78, 129 S.Ct. 1937.

*Ball-Bey v. Chandler,* 415 F.Supp. 3d 884, 889-90 (U.S. Dist. Ct. E.D. 2019)

## III.   COUNTS I, II AND III (42 U.S.C. §1983)

### A. THE LAW

It is axiomatic that a county cannot be held liable under § 1983 on a *respondent superior* theory.  *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Again, this Court thoroughly summarized the *Monell* standard in its *Ball-Bey* opinion:

> In *Monell*, and subsequent cases, the Supreme Court "require[s] a plaintiff seeking to impose liability on a municipality under §1983 to identify a municipal 'policy' or 'custom' that *caused* the plaintiff's injury." *Bd. Of Cty. Comm'rs of Bryan Cty., Okla v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (other citations omitted).

> **[8] [9]** A plaintiff cannot establish liability by only identifying conduct properly attributable to the municipality; instead, a "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the '*moving force*' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights." *Id.* at 404, 117 S.Ct. 1382 (emphasis added).  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, *rigorous standards of culpability and causation must be applied* to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*  at 405, 117 S.Ct. 1382 (emphasis added); *see also Soltesz v. Rushmore Plaza Civic Ctr.,* 847 F.3d 941, 947 (8th Cir. 2017) ("The Supreme Court has set a high bar for establishing municipal liability under §1983.")

***

> As the Supreme Court stated: "our first inquiry in any case alleging municipal liability under §1983 is the question, whether there is a direct casual link between a municipal policy or custom and the alleged constitutional deprivation." *Canton*, 489 U.S. at 385, 109 S.Ct. 1197. This is a rigorous standard [] of causation". *Brown*, 520 U.S. at 404-05, 117 S.Ct. 1382 (other citations omitted).

*Ball-Bey*, 415 F. Supp at 892-93, 897. (All emphasis in original).

In addition to a policy or custom, a plaintiff may recover if he/she pleads and proves a failure to train or supervise claim. Again, looking to *Ball-Bey*, this Court has summarized this type of claim as follows:

> To state a claim for supervisory liability under § 1983 for a failure to train or supervise, Ball-Bey must plead: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012).

> A failure to train may serve as the basis for §1983 liability where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388, 109 S.Ct. 1197. A court analyzes a claim for failure to supervise the same way it analyzes a claim for failure to train *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

> When governmental policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the governmental entity may be deemed deliberately indifferent if the policymakers choose to retain that program. *Brown,* 520 U.S. at 407, 117 S.Ct. 1382. The governmental entity's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the [governmental entity] itself to violate the Constitution.'" *Connick*, 563 U.S. at 60, 131 S.Ct. 1350 (quoting *Harris*, 489 U.S. at 395, 109 S.Ct. 1197 (O'Conner, J. concurring in part and dissenting in part)). "A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train" *Id.* at 62, 131 S.Ct. 1350.

*Ball-Bey*, 415 F. Supp. At 900.

B.  <u>COUNT I</u>

Initially, it is not clear whether Plaintiffs intend to assert a claim against St. Francois County or Hardy White in Count I.  The caption to Count I states that the claims contained therein are made against only certain individual defendants.  However, in the body of the count and the prayer, Plaintiffs make allegations and seek relief against all defendants including St. Francois County and White.  Accordingly, the County and White (together with Defendant Dennis Smith) will address this Count.

Count I can be quickly dispatched because Plaintiffs make no allegations that would support a claim against the County.  Plaintiffs allege no policy or custom, nor do they assert a failure to train or supervise claim.  Likewise, they make no such allegations against the alleged jail supervisors, Defendant Dennis Smith and Hardy White.  Accordingly, to the extent that this count seeks relief against these defendants, it should be dismissed.

C.  <u>COUNT II</u>

Count II purports to state a claim against the County and supervisory Defendants Dennis Smith and Hardy White [2] for failure to train the Department's deputies and failure to provide medical staff during evenings and on weekends.  Upon examination, it is clear that Plaintiffs do nothing more than set forth a rote recitation of "failure to train" or "failure to staff".  There are no facts that support these conclusory allegations and, therefore, this Count should be dismissed.

Of the 157 paragraphs that compromise Count II, there are only seven (7) allegations that even touch on a failure to train jailers or/properly staff the jail:

> 73. Defendants Hodge, Davis, Hansen, and Hahn never received any training in the use of the restraint chair and have never seen a written policy regarding the use of the restraint chair.
> ***

---

[2] Again, the individuals are not named in the heading to this Count but are included in the body of it.

84. Upon information and belief, as part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), Defendants, acting pursuant to the Sheriff's Department's policy, do not provide medical personnel to evaluate detainees for medical issues on evenings and weekends.

85. Upon information and belief, as part of the St. Francois County Sheriff's Department policy (whether written, unwritten or simply custom and practice), no trained medical personnel are present on evenings and weekends at the St. Francois County Jail to administer medication to inmates on evenings and weekends.

*** 

151. On information and belief, the Defendants County, Sheriff[3], Smith, and White have intentionally failed and refused to provide sufficient medical staff during evenings and weekends to see to the medical needs of pretrial detainees.

152. Upon information and belief, Defendants County, Sheriff, Smith, and White failed to provide their staff – including Defendants Lunsford, Hahn, Hodge, Nickelson, Davis, and Hansen – with the appropriate training to recognize when medical evaluation and/or invention is necessary.

153. On information and belief, the Sheriff's Department, the County and the Jail have a policy of not staffing appropriate medical personnel on evenings and weekends to save money.

154. By failing to train the evening and weekend staff on recognizing when a pretrial detainee needs medical treatment, and by failing to provide staff that have those skills, the Sheriff's Department, the County and the Jail violated 42 U.S.C. 1983 and Mr. Ames, III's Constitutional rights.

*Plaintiffs' First Amended Complaint*, ECF 24, pp. 11, 13, and 24. These allegations fall woefully short of stating a viable §1983 claim.

As noted, the allegations are nothing more than rote conclusions of law. The first allegation (para 73) pertains to use of a restraint chair. It is not relevant to provision of medical care or staffing. The remaining allegations fail to allege any factual support for the claim. There

---

[3] The term "Sheriff" is earlier defined as Defendant St. Francois County Sheriff's Department. (ECF 24, *First Amended Complaint*, Introductory para., p. 1). To be clear, Sheriff Dan Bullock is not a party to this action.

is no allegation of what training the jailers had or even whether they were P.O.S.T certified law enforcement officers (which they were); There is no allegation of any facts concerning training that allegedly should have been provided;  Perhaps most significant, there are no allegations of even a single other instance of indifference to a serious medical need, let alone a pattern of such unconstitutional acts.  Of course, with no allegations of a pattern of unconstitutional conduct, there is no allegation that any policymaker had notice of same or tacitly authorized it.

Finally, there are no factual allegations that suggest that the purported failure to train was the "moving force" behind the deputies alleged deliberate indifference to Mr. Ames' serious medical needs.  Just as in *Ball-Bey*, Plaintiffs' "plead [] no facts from which the Court can infer a direct causal link, instead [they] resort [] only to conclusory allegations that "disentitles them to the presumption of truth []".  *Ball-Bey*, at 897 (citing *Iqbal*), 556 U.S. at 681, 129 S.Ct. 1937).

In sum, Plaintiffs fail to state a viable claim against the County and supervisory Defendants Dennis Smith and Hardy White and Count II of *Plaintiffs' First Amended Complaint* should be dismissed.

      D.  <u>COUNT III</u>

Plaintiffs purport to state a claim for cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution.  This count suffers from the same deficiency as Count I.  There are simply no allegations whatsoever against the County or the supervisory individuals.  This Count should also be dismissed.

**IV.**    <u>**COUNT IV (Rehabilitation Act of 1973 and ADA)**</u>

Count IV of Plaintiffs' First Amended Complaint alleges discrimination under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act

("Rehabilitation Act") against the County[4]. Plaintiffs allege that Ames was a qualified individual with a disability as defined by 42 U.S.C. § 12102 and a "qualified individual" as defined by 42 U.S.C. § 12131(2) as the result of a traumatic brain injury because of which Ames received disability benefits and medical treatment, including anti-seizure medication. Plaintiffs allege that the County discriminated against Ames on the basis of this brain injury/seizure disability. (ECF 24, *Plaintiffs' First Amended Complaint* ¶ 174). For the reasons that follow, Count IV must be dismissed.

Plaintiffs specifically allege that Ames suffered discrimination under the ADA or Rehabilitation Act because, during his incarceration, Ames was: 1) unable to "interact with others, form friendships, visit, chat and move at liberty"; 2) unable to enjoy physical comforts "such as games, books, radios, access to canteen, frequent shows, visits, and phone calls"; 3) unable to enjoy jail educational facilities; 4) unable to enjoy religious activities, including chapel, study groups, and religious materials; 5) was deprived of a safe environment without adequate sanitation and removal of traps and obstructions; 6) was deprived of his seizure medications and "with his extremities restrained, was exposed to a range of hazards that led to his death"; 7) was denied health care and treatment, including deprivation of food, water and access to toilets; and 8) was denied security monitoring.  (*Id.* ¶ 183(a) – (h)).

All of the deprivations or alleged "discrimination" are predicated on the purported denial of medical care by the County. As a matter of law, a claim based on medical treatment decisions is not actionable under either the ADA or the Rehabilitation Act. *Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005). (See also *Dinkins v. Correctional Medical Services,* 743 F.3d 633, 634 (dismissing Plaintiff's ADA and RA claims based on medical treatment decisions).

---

[4] See footnote 1

Count IV describes various services, programs and activities that Ames allegedly could not participate in or have access to, all of which are presumably accessible to inmates in general, such as interacting with other inmates, physical comforts, educational facilities or religious activities. However, Plaintiffs do not assert that these activities or conditions were unavailable to Ames; rather, Plaintiffs allege that Ames could not benefit from these activities due to a "**lack of treatment and adequate supervision**." (ECF 24, *First Amended Complaint* ¶183 (a - e and h). Construing identical language, the Eighth Circuit has held that allegations for "a lack of treatment and adequate supervision" cannot be brought under the ADA or Rehabilitation Act:

> But the complaint alleges [the inmate] could have enjoyed various benefits of jail life but for "a lack of treatment and adequate supervision" and states he was not given appropriate medication, protection from hazards, and security monitoring that would have prevented him from committing suicide. These allegations are, in essence, claims of inadequate medical treatment indistinguishable from the claims we held could not be brought under the ADA or RA in *Shelton.*

*A.H. v. St. Louis City,* 891 F.3d 721, 729 (8th Cir. 2018) citing *Shelton v. Ark. Dep't of Human Servs.,* 677 F.3d 837, 843 n.2 (8th Cir. 2012) (which held that claims based upon improper medical treatment decisions may not be brought pursuant to either the ADA or the Rehabilitation Act in the context of removing a patient from suicide watch).

Further, Plaintiffs allege that Ames was deprived of his seizure medications and entitled to care and treatment for his particular health needs. (ECF 24, *First Amended Complaint* ¶ 183(f) and (g). These allegations confirm that the characterization of Plaintiffs' claim is that of a denial of medical care and treatment, not discrimination under the ADA or Rehabilitation Act. The entire basis for Plaintiffs' claims in Count IV is that Ames was deprived of treatment and supervision for his seizures, which is clearly analyzed as a claim for inadequate medical treatment as a matter of law.

Finally, the allegations in Count IV are conclusory and fail to state more than the bare bones elements of claims under the ADA or Rehabilitation Act. For example, Plaintiffs allege that Defendants failed to provide Ames "with accommodations for his disability and the satisfaction of common needs necessary to a decent life" and that as a result, Ames "suffered from prolonged isolation, despair, physical pain and, ultimately death, from an untreated overdose." (ECF 24, *Plaintiffs' First Amended Complaint* ¶ 184). Plaintiffs must "explain the legal significance of [their] factual allegations beyond mere conclusory statements importing the appropriate terms of art." *Quinn v. St. Louis Cty.,* 653 F.3d 745, 752 (8th Cir. 2011) (internal citations omitted). Again, Plaintiffs fail to provide *any* causal connection as to how the "lack of treatment and supervision" of Ames seizure condition resulted in discrimination sufficient to state a claim under the ADA and the Rehabilitation Act.

Accordingly, Count IV should be dismissed.

## CONCLUSION

For the reasons and based on the authority cited herein, Defendants St. Francois County, Dennis Smith, and Hardy White respectfully request the Court to dismiss with prejudice Counts I, II, III, and IV of Plaintiffs' First Amended Complaint insofar as such counts are asserted against them.

Respectfully submitted,

  /s/ William A. Hellmich
William A. Hellmich, #31182MO
Michelle V. Stallings, #57833MO
HELLMICH, HILL & RETTER, LLC
1049 North Clay Avenue
Kirkwood, MO  63122
314-646-1110 – Phone
314-646-1122 – Fax
bill@hellmichhillretter.com
michelle@hellmichhillretter.com

*Attorneys for Defendants*

and

Ross D. McFerron, #60047MO
OSBURN, HINE & YATES, LLC
3071 Lexington Avenue
Cape Girardeau, MO 63701
573-651-9000 – Phone
573-651-9090 – Fax
mcferron@ohylaw.com

*Attorney for Defendant St. Francois County*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was sent via email, this 15th day of September, 2020, addressed as follows:

Vonne L. Karraker                           Vincent Colianni, II
Manley, Karraker & Karraker, P.C.           Colianni & Colianni, LLC
110 S. Jefferson Street                     4001 Village Run Road
Farmington, MO  63640                       Wexford, PA  15090
vonne@semoelderlaw.com                      vinny@colianni.com

  /s/ William A. Hellmich