UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM AMES, Jr. et al., ) | |
| ) | |
|    Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-00173 SRC |
| ) | |
| ST. FRANCOIS COUNTY SHERIFF'S ) | |
| DEPARTMENT, et al., ) | |
| ) | |
|    Defendant(s). | |

### Memorandum and Order

This matter comes before the Court on Plaintiffs' [109] Motion to Vacate [60] Consent Order Regarding Defendants' Motion for Sanctions and Contempt. The Court grants the motion.

**I.   Background**

The Court entered a protective order in this matter on May 19, 2020. Doc. 45. The Protective Order allows any party to designate documents or deposition testimony as "confidential" or "highly confidential" if the party believes in good faith that the documents or testimony contain confidential information. *Id*. ¶¶ 3–4. Under the protective order, depositions are automatically deemed "highly confidential" for 30 days after the transcripts become available. *Id*. ¶ 4.

After Plaintiffs deposed several defendants on May 13 and 14, 2020, Joe Braun, Plaintiff Laurie Braun's husband, published excerpts from these depositions on Facebook on June 5, 2020. Docs. 47, 109, 113. Because the 30-day period for designating the depositions as confidential had not expired, Defendants objected to their publication on Facebook and filed a motion for sanctions and contempt. Doc. 47.

On June 23, 2020, the Court held a hearing on Defendants' motion and took the matter under submission.  Doc. 57.  Before the Court ruled on the motion for contempt, the parties resolved their dispute by entering into a consent order, Doc. 59, which the Court granted.  Doc. 60.  The consent order, in relevant part, provides:

> [t]his Order shall apply to all parties and their attorneys (including staff, associates and partners in their firms). All such persons shall not publish or disclose any deposition transcript, or any portion of any such transcript, in any newspaper, social media platform, or other internet site, regardless of whether such deposition, or portion thereof, is designated as "Confidential" or Highly Confidential" under the Protective Order entered in this cause. In addition, all such persons shall not publish or disclose any such deposition transcript, or portion thereof, to any family member or other person who intends to publish it in any newspaper, social media platform, or other internet site. Finally, all such persons shall not paraphrase, quote, summarize, or otherwise comment on the deposition testimony in any newspaper, social media platform, or other internet site.

*Id*.

The parties settled this case in its entirety in February 2021, Doc. 103, and the Court approved the settlement agreement.  Doc. 107.  Before the settlement proceeds had been distributed in accordance with the settlement order, Plaintiffs filed a motion to vacate the consent order, Doc. 109, as well as an unopposed motion for an expedited ruling, Doc. 110, Doc. 112.  Defendants did file an opposition to the motion to lift the consent order.  Doc. 113.  After Plaintiffs filed their reply, Doc. 114, Defendants moved for leave to file a sur-reply, Doc. 115, which Plaintiffs oppose, Doc. 116.  The Court grants Defendants motion for leave to file a sur-reply and addresses the now-fully briefed motion to lift consent order below.

**II.    Discussion**

The consent order does not provide a date or event when it would be lifted, nor did it state that it would last until into perpetuity.  Lacking such controlling language, the parties

dispute whether the consent order was intended into last into perpetuity, like the protective order in this case, or be lifted at the end the case.

In their sur-reply, Defendants argue that Plaintiffs' counsel never made any indication during negotiations over the consent order that it would be time limited and had Plaintiffs' counsel done so, Defendants would not have agreed to the order.  Doc. 115.  Defendants provided emails from the parties' negotiations over the consent order and these emails show that the parties never discussed how long the agreement was supposed to last.  Doc. 115-1.  Thus, because neither side discussed how long the parties would be bound by the consent order, these emails do not support Defendants or Plaintiffs.

However, in their initial motion for contempt, Defendants prayed for an order that Plaintiffs could not publicly disseminate the deposition transcripts "*for the duration of the case*." Doc. 47.  Moreover, Defendants' chief concerns prompting the filing of the motion for contempt included both a violation of the protective and that dissemination of the deposition transcripts could "taint[] the jury pool[.]"  Doc. 48.  As Plaintiffs note, with the case having settled, a key purpose underlying the order no longer exists.

Nevertheless, Defendants claim that the risk of poisoning the jury pool remains because of the other cases that have been filed by Plaintiffs' counsel against St. Francois County, and in some instances, several of the individually names parties as well.  Doc. 113.  To emphasize that this risk remains, Defendants point to Plaintiffs' statement that the deposition testimony in this matter contradicts testimony provided in the other cases Plaintiffs' counsel has filed.  Doc. 110.

To the extent Plaintiffs' counsel seeks to use deposition testimony in this case in those other cases, that issue seems best left for the judges in those cases to address.  Next, regarding tainting the jury pool, this concern stems from the jury pool receiving improper

3

facts/comments/opinions about a case that is currently pending. Thus, that the public may hear something potentially damaging about a defendant does not necessarily taint, at least to the same level, the jury pool for an entirely separate case involving that same defendant. Additionally, if Plaintiffs end up publishing the deposition transcripts online in a disparaging way, the non-disparagement clause in the settlement agreement protects Defendants. Doc. 106-1 at ¶ 11. Defendants effectively concede this point, stating that they "have a legitimate concern that Plaintiffs may attempt to use the transcripts to disparage the Defendants, *in violation of the terms of the Settlement Agreement*." Doc. 113.

Additionally, contrary to Defendants' belief, the consent order does not serve as an extension of the protective order. The protective order entered in this case provides that materials deemed confidential could only be used in this litigation and that "[t]he provisions of the protective order shall continue to be binding after final termination of this Litigation." Doc. 45 at ¶ 12. Defendants admit that they did not designate any deposition transcripts as confidential, believing instead that, under the consent order, all deposition materials would be confidential in perpetuity. Doc. 115.

Defendants take an overly broad view of the consent order. The consent order provided, in part, that all parties and their attorneys "shall not publish or disclose any deposition transcript, or any portion of any such transcript, in any newspaper, social media platform, or other site, regardless of whether such deposition, or portion thereof, is designated as 'confidential' or 'highly confidential' under the Protective Order in this case." Doc. 47. The focus of the consent order thus aimed to prevent the dissemination of deposition materials to the public and did not include any language providing that all deposition materials are now confidential. In fact, under the consent order, a party or attorney could disseminate deposition transcripts not designated as

4

confidential to *anyone* so long as that individual did not intend to post, comment, etc., about the deposition testimony "in any newspaper, social media platform, or other internet site." Moreover, finding that the protective order made all deposition transcripts confidential would render the following language in the consent order superfluous: "regardless of whether such deposition, or portion thereof, is designated as 'confidential' or 'highly confidential' under the Protective Order in this case." Doc. 47. Thus, required to give effect to each word and clause in the consent order, the Court concludes that the consent order did not render all deposition testimony confidential.

Finally, the Court's ruling has limited consequences. For example, even if the Court denied Plaintiffs' motion to lift the consent order, the parties and their attorneys could still disseminate the deposition transcripts between themselves and to any individuals that did not intend to share the deposition transcripts online or send them to a newspaper. However, the non-disparagement clause of the settlement agreement limits the impact of Plaintiffs' ability to disseminate the deposition transcripts or comment about the contents.

In sum, because the purposes underlying the consent order no longer exist and the consent order did not render the deposition transcripts confidential and Defendants failed to deem them confidential, the Court grants [109] Motion to Vacate [60] Consent Order Regarding Defendants' Motion for Sanctions and Contempt. The Court denies, as moot, [117] Motion for Extension of Time to File Dismissal with Prejudice. With the settlement proceeds having been distributed pursuant to the settlement agreement, Doc. 110 at ¶ 6, the Court orders the parties to file a stipulation of dismissal no later than May 6, 2021.

So Ordered this 4th day of May 2021.

_SLR.CR_

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**